Jeffrey L. Hartman, Esq.
Nevada Bar No. 1607
**HARTMAN & HARTMAN**
510 W. Plumb Lane, Suite B
Reno, NV 89509
T: (775) 324-2800
F: (775) 324-1818
notices@bankruptcyreno.com

Michael S. Budwick, Esq. #938777 – Admitted *Pro Hac Vice*
Solomon B. Genet, Esq. #617911 – Admitted *Pro Hac Vice*
Gil Ben-Ezra, Esq. #118089 – Admitted *Pro Hac Vice*
Kevin Paule, Esq. #125276 – Admitted *Pro Hac Vice*
**MELAND BUDWICK, P.A.**
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
T: (305) 358-6363
F: (305) 358-1221
mbudwick@melandbudwick.com
sgenet@melandbudwick.com
gbenezra@melandbudwick.com
kpaule@melandbudwick.com

Attorneys for Christina W. Lovato, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE JUMP, INC.<br><br>    Debtor.<br><br>Affects:<br>☒ DC Solar Solutions, Inc.<br>☐ DC Solar Distribution, Inc.<br>☐ DC Solar Freedom, Inc.<br>☐ Double Jump, Inc.<br><br>CHRISTINA W. LOVATO,<br><br>    Plaintiff,<br><br>v.<br><br>SANDRA SARKISSIAN, SUCCESSOR TRUSTEE OF THE SAM SARKISSIAN AND SANDRA SARKISSIAN LIVING TRUST DATED SEPTEMBER 4, 1997,<br><br>    Defendant. | Lead Case No.: BK-19-50102-gs<br>(Chapter 7)<br><br>Jointly Administered with:<br><br>\| 19-50130-gs \| DC Solar Solutions, Inc. \|<br>\| 19-50131-gs \| DC Solar Distribution, Inc. \|<br>\| 19-50135-gs \| DC Solar Freedom, Inc. \|<br><br>Adversary No.:<br><br>**ADVERSARY COMPLAINT** |

Christina W. Lovato, in her capacity as the chapter 7 trustee ("***Trustee***" or "***Plaintiff***") for the bankruptcy estates of DC Solar Solutions, Inc. ("***DCSS***"), DC Solar Distribution, Inc.

1

("*DCSD*"), DC Solar Freedom, Inc. ("*DCSF*," and with DCSD and DCSS, "*DC Solar*") and Double Jump, Inc. ("*DJ*," and with DC Solar, the "*Debtors*"), files her complaint ("*Complaint*") commencing this adversary proceeding ("*Action*") against Sandra Sarkissian, Successor Trustee of the Sam Sarkissian and Sandra Sarkissian Living Trust dated September 4, 1997 ("*Defendant*") and alleges as follows.

## PARTIES

1. The Trustee is the chapter 7 bankruptcy trustee for the Debtors. The Trustee has the capacity to commence this action by way of, among other things, 11 U.S.C. § 323.

2. The Defendant is the former owner of certain real property located at 2750 Maxwell Way, Fairfield, CA 94534 ("*Property*").

## JURISDICTION

3. The Bankruptcy Court has jurisdiction over this case and this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

4. The Trustee consents to the entry of final orders and judgments by the Bankruptcy Court.

## FACTUAL ALLEGATIONS

I. **DC Solar and the Carpoff Ponzi Scheme**

5. DC Solar was incorporated and headquartered in California.

6. DC Solar had, at all material times, certain legitimate business operations.

7. From no later than on or around calendar year(s) 2010 through 2018, DC Solar was engaged in a business related to manufacturing, marketing, selling and leasing mobile solar generators ("*MSGs*").

8. Generally, the business purported to operate as follows. DCSS would manufacture and sell MSGs for $150,000 each. The buyers were typically tax-equity funds, 99% owned by a financial investor seeking investment federal tax credits. The buyers would provide DCSS a $45,000 down-payment (30% of the total purchase price) and execute a promissory note for the remaining balance. The buyers would lease the MSGs to DCSS's affiliate DCSD, which in turn

purported to sub-lease the MSG to an end-user/sub-lessee. The end-user's/sub-lessee's lease payments were intended to cover the interest payments on the promissory note.

9. DCSF's role was in connection with marketing, branding and advertising the MSGs and DC Solar, in connection with the socially-conscious nature of solar energy. DCSF was created in June 2015.

10. DC Solar had significant professional, operational and other expenses.

11. The financial investor that acquired the majority stake in the buyer sought to take advantage of valuable federal income tax benefits related to the purchase, use and depreciation of the MSGs.

12. Over the years, DCSS closed over two dozen transactions, purportedly selling over 15,000 MSGs and generating hundreds of millions of dollars of revenue.

13. However, certain of DC Solar's insiders, including Jeff Carpoff and Paulette Carpoff (together, the "*Carpoffs*"), were also perpetrating a Ponzi scheme ("*Carpoff Ponzi Scheme*") through DC Solar and other entities.

14. The Carpoffs caused DC Solar to transfer monies obtained from new buyers of MSGs to cover obligations owed to earlier buyers. This was contrary to the Carpoffs' representations to the financial investors that sub-lessee revenue would pay those obligations. Moreover, the Carpoffs misrepresented to the financial investors the number of MSGs that DC Solar manufactured, ultimately claiming in 2018 that the figure exceeded 15,000 when it was actually far less. Moreover, although the Carpoffs represented to the financial investors that DC Solar had a series of sub-lessees willing to pay to utilize the MSGs, some sub-leases were real but others were not.

15. Further, the Carpoffs looted DC Solar to, among other things, fund their own lavish lifestyle, including through casino gambling, buying a semi-pro baseball team, the use of private jets and the purchase of real and personal property (such as automobiles). And the Carpoffs looted DC Solar to, among other things, pay-off co-conspirators and make payments such as marketing payments (legitimate or illegitimate) to third-parties. This all was intended, in material part, to further the Carpoff Ponzi Scheme and/or create the perception that DC Solar was profitable.

16. Because of (among other things) the harm the Carpoffs inflicted upon DC Solar through the Carpoffs' wrongdoing, including the liabilities the Carpoffs created for DC Solar, DC Solar was insolvent on the date of the transfers (defined below).

17. Certain of DC Solar's insiders other than the Carpoffs knew of and participated in the Carpoff Ponzi Scheme.

18. However, certain other DC Solar-insiders, including individuals who (1) owned equity interests, (2) served as officers, (3) served as executives, and/or (4) held management-level positions, each at different times and with varying levels of authority over one or more of the Debtors, were unaware of and did not participate in the Carpoff Ponzi Scheme.

## II. The Raid Through the Debtors' Bankruptcy Filing

19. On December 18, 2018, Federal law enforcement raided the business locations of DCSS, DCSD and certain other affiliates ("***Raid***").

20. After December 18, 2018 and before the Petition Date (defined below), DC Solar made substantial corporate governance changes, and retained GlassRatner Advisory & Capital Group LLC and designated Seth R. Freeman as chief restructuring officer.

21. Between January 31 and February 5, 2019 ("***Petition Date***"), the Debtors filed their voluntary chapter 11 petition. The Debtors' chapter 11 bankruptcy cases were converted to chapter 7 on March 22, 2019 and the Trustee was appointed as the chapter 7 trustee.

## III. The Transfers

22. In or around February 2018, Jeff and Paulette Carpoff (individually) signed a purchase and sale agreement with an affiliate of the Defendant to purchase the Property. Per the contract, the Carpoffs had the right to assign their rights as "buyer" to an affiliated entity.

23. The Carpoffs caused an entity named 2750 Maxwell Way, LLC ("***Buyer***"), a California limited liability company, to be created. The Carpoffs caused the Buyer to purchase the Property on or about May 2018.

24. However, DCSS made the payments to purchase the Property, for which it received no value or benefit.

25. To wit and as payment for the purchase of the Property, the Carpoffs caused DCSS to make the following transfers ("*Transfers*") through an escrow agent (a conduit) to the Defendant: (i) on March 19, 2018, DCSS transferred $100,000 to an escrow agent (a conduit); and (ii) on May 7, 2018, DCSS transferred $2,287,335.34 to an escrow agent (a conduit). On or about May 8, 2018, the escrow agent transferred $2,387,335.34 to the Defendant.

26. DCSS made the Transfers but received nothing of value in exchange for the Transfers.

27. The Carpoffs caused DCSS to make the Transfers as a mechanism for the Carpoffs to loot the Debtors, benefit themselves, harm creditors, and further the perception that they and their businesses were successful, all in furtherance of and related to the Carpoff Ponzi Scheme. Thus, the Transfers furthered the Carpoffs' efforts to conceal their wrongdoing while enabling them to benefit and profit from their own scheme.

## CLAIMS FOR RELIEF

### COUNT I
### Actual Fraudulent Transfer
### 11 U.S.C. § 548(a)(1)(A)

28. The Trustee re-alleges paragraphs 1 through 27 as though fully stated herein.

29. DCSS made the Transfers within two years of the Petition Date.

30. The Carpoffs caused DCSS to make the Transfers with the actual intent to hinder, delay or defraud its creditors.

### COUNT II
### Constructive Fraudulent Transfer
### 11 U.S.C. §§ 548(a)(1)(B)

31. The Trustee re-alleges paragraphs 1 through 27 as though fully stated herein.

32. DCSS made the Transfers within two years of the Petition Date.

33. By no later than the time of the Transfers, the Carpoffs were perpetrating the Carpoff Ponzi Scheme through DC Solar and other entities. At the time of each of the Transfers, because of the Carpoff Ponzi Scheme and the claims held by the buyers of MSGs against DCSS, DCSS: (1) was insolvent, as its liabilities exceeded its assets; (2) was engaged (and was continuing to engage) in a business or transaction for which DCSS' property remaining after the Transfers

5

constituted unreasonably small capital; and (3) intended to incur or believed it would incur debts beyond its ability to pay.

34. DCSS did not receive reasonably equivalent value in exchange for the Transfers.

## COUNT III
## 11 U.S.C. § 550(a)

35. The Trustee re-alleges paragraphs 1 through 27 as though fully stated herein.

36. The Trustee is entitled to avoid the Transfers pursuant to 11 U.S.C. §548. *See* Counts I and II above.

37. The Defendant is the initial transferee of the Transfers. Therefore, once avoided, the Trustee may recover the Transfers from the Defendant.

**WHEREFORE**, the Trustee prays for and demands order and judgment against the Defendant as follows:

(1) Count I:   Avoiding the Transfers under 11 U.S.C. §548(a)(1)(A).

(2) Count II:  Avoiding the Transfers under 11 U.S.C. §548(a)(1)(B).

(3) Count III: Entering a Judgment in the amount of the Transfers in favor of the Trustee and against the Defendant along with interest both before and after the commencement of this Action.

In addition, the Trustee requests from the Court any such other and further relief, equitable or otherwise, that this Court deems just and proper.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

DATED: January 22, 2021.

**HARTMAN & HARTMAN**

*/s/ Jeffrey L. Hartman, Esq.*
Jeffrey L. Hartman, Esq., Attorney for Plaintiff
Christina W. Lovato

**MELAND BUDWICK, P.A.**

*/s/ Michael S. Budwick, Esq.*
Michael S. Budwick, Esq., Admitted Pro Hac Vice
Solomon B. Genet, Esq., Admitted Pro Hac Vice
Gil Ben-Ezra, Esq., Admitted Pro Hac Vice
Kevin Paule, Esq., Admitted Pro Hac Vice
Attorneys for Plaintiff Christina W. Lovato